Opinion by
Mr. Justice Moore.
Where individual parties to this action are referred to they will be mentioned by name, and where both the plaintiffs in error or all the defendants in error are included in the reference they will be mentioned as they appeared in the trial court where plaintiffs in error were plaintiffs and defendants in error were defendants.
Plaintiff Marlatt is a licensed real estate broker who allegedly procured a purchaser ready, willing, and able to buy real estate which stood on the records of the county clerk and recorder of Adams county in the names of the defendants. All three defendants had signed a nonexclusive listing agreement with him dated May 30, 1960. He seeks to recover a commission as a real estate broker. Plaintiff Hokr is the person procured by Marlatt as the intended purchaser of the real estate in question. He seeks to recover the sum of $5,000.00 liquidated damages which he claims is due under his contract to purchase, because of the failure of defendants to consummate the sale.
Defendants filed an answer and counterclaim to the complaint of plaintiffs. The answer contained the following allegations:
“1. Defendants Thomas R. J. Price and Anita M: Price admit that they signed an agreement in writing which substantially conformed to the copy of agreement which is annexed to plaintiffs’ Complaint and incorporated therein, however, said defendants specifically deny that they entered into an agreement which included the signature of the defendant Mary Genevieve Price, and said defendants affirmatively allege that it was their specific understanding in signing said agreement that the defendant Mary Genevieve Price would not be called Upon-'by *267 plaintiff or either of them to sign said document. All defendants allege that the signature of the defendant Mary Genevieve Price was obtained by the plaintiff Ira D. Marlatt in violation of his authority as agent for the defendants Thomas R. J. Price and Anita M. Price; that said plaintiff Ira D. Marlatt procured the signature of defendant Mary Genevieve Price by means of trickery and false representations.
“2. Defendants admit that they have refused to perform the conditions of said agreement and that they notified plaintiffs verbally and in writing of their refusal to perform said conditions; defendants affirmatively allege that the agreement [sic] Thomas R. J. Price and Anita M. Price advised the plaintiff Ira D. Marlatt that they had purchased all of the interest of Mary Genevieve Price in and to the subject property, other than said Mary Genevieve Price’s mineral interest and interest in producing oil well; that said Thomas R. J. Price and Anita M. Price signed said Exhibit A only after plaintiff Ira D. Marlatt specifically assured said defendants that he would not attempt to obtain the signature of Mary Genevieve Price.”
The counterclaim alleged as follows:
“1. That on or about January 23, 1961, Ira D. Marlatt negotiated an agreement for the purchase of certain real estate more specifically described in a document entitled Exhibit A which is attached to plaintiffs’ Complaint and made a part thereof.
■ “2. That the signatures of the defendants and each of them to said agreement were procured by said Ira D. Marlatt through caprice and trickery and in violation of the terms of his employment as agent for defendants Thomas R. J. Price and Anita M. Price.
“3. That the plaintiff Ira D. Marlatt had been informed and well knew that defendants Thomas R. J. Price and Anita.M. .Price had purchased all of the interest of Mary Genevieve Price in the subject property other than said M.ary¡Genevieve Price’s mineral interest'in said property. *268 Plaintiff Ira D. Marlatt was also well aware of the'fact that even though the Deed conveying the subject property to Thomas R. J. Price and Anita M. Price had not been placed of record by said Thomas R. J. Price and Anita M. Price, nevertheless such Deed was and is in existence and that defendants Thomas R. J. Price and Anita M. Price were capable of conveying a fee simple title to the property to any given purchaser, subject only to the defendant Mary Genevieve Price’s mineral interest therein. That the defendants Thomas R. J. Price and Anita M. Price specifically directed the plaintiff Ira D. Marlatt to refrain from approaching the defendant Mary Genevieve Price for the purpose of the execution of a contract for the sale of the subject property; that in spite of his instructions from the defendants Thomas R. J. Price and Anita M. Price to the contrary, the plaintiff Ira D. Marlatt proceeded to the home of the defendant Mary Genevieve Price and obtained her signature to the contract without the knowledge or consent of the defendants Thomas R. J. Price and Anita M. Price; that said plaintiff Ira M. Marlatt represented to the defendant Mary Genevieve Price that her son Thomas R. J. Price and her daughter-in-law Anita M. Price desired that she affix her signature to the contract and that if she failed to sign the document, her son above named would lose the sale of the property; that defendant Mary Genevieve Price would not have signed said Exhibit A had she known that her son Thomas R. J. Price had specifically directed plaintiff Ira D. Marlatt to refrain from approaching her in connection with the sale of the property.
“4. That plaintiff Ira D. Marlatt wholly failed to divulge to the plaintiff R. J. Hokr that the defendants Thomas R. J. Price and Anita M. Price did not desire to sell the subject property if such sale would operate to divest Thomas R. J. Price’s mother, Mary Genevieve Price, of her interest in the minerals and producing oil well situate on the property. That as a result of plain *269 tiff Ira D. Marlatt’s failure to disclose said facts to the purchaser, purchaser, plaintiff R. J. Hokr, may have procured, by virtue of said agreement, a valid claim for liquidated damages against the defendants and each of them in the sum of $5,000.00; that if plaintiff R. J. Hokr prevails in his action for damages against defendants, said defendants’ liability to the said plaintiff Hokr arose and came about as a direct and proximate result of plaintiff Ira D. Marlatt’s wilful and wanton violation and disregard of his authority as agent for the defendants Thomas R. J. Price and Anita M. Price; that if it should be determined by the Court that defendants and each of them are liable for damages to plaintiff R. J. Hokr in the sum of $5,000.00 plus collection costs, plaintiff Ira D. Marlatt should be held liable to defendants in a like sum as a result of his breach' of his employment contract, all as more specifically set forth above.”
The prayer of defendants was that judgment be entered in their favor and against Marlatt for any sum which the court might adjudge to be due from them to the plaintiff Hokr.
The case was tried to the court which entered Findings of Fact, Conclusions of Law and Judgment which contained the following:
“The Plaintiff R. J. Hokr herein alleged that he is damaged in the amount of $5,000 due to the failure of the defendants to comply with the terms of a contract. The Plaintiff Ira D. Marlatt alleges that he is damaged in the sum of $5,184 as a loss of commission from the sale of the property in question. Plaintiff R. J. Hokr was the prospective buyer, Plaintiff Ira D. Marlatt was the broker, and Defendants Thomas R. J. and Anita M. and Mary Genevieve Price were the sellers.
“A listing agreement was executed and signed by all three defendants, each at different times and places. A sales contract was drawn up and dated January 23, 1961, which bears the contract of the buyer, Plaintiff R. J. Hokr; and the broker, Plaintiff Ira D. Marlatt.
*270 “The Court finds that the contract for the sale of the real estate was procured by Plaintiff Ira D. Marlatt, but the circumstances surrounding the contract was [sic] such as gave rise to a breach of Plaintiff Ira D. Marlatt’s fiduciary relationship with the Defendant Thomas R. J. Price. The Court further finds that due to said breach of fiduciary relationship Plaintiff Ira D. Marlatt is not entitled to damages for the failure of the Defendants to carry out the terms of the contract. The Court further finds that Plaintiff R. J. Hokr has no recourse as to Defendants Thomas R. J., Anita M. and Mary Genevieve Price. As to the Defendant’s Counter-Claim, the Court finds no merit, and their claim is held for naught.”
Motion for new trial was filed by plaintiffs, which raised the points hereinafter discussed; the motion was overruled, and plaintiffs are here by writ of error seeking reversal of the judgment.
The two-point argument advanced by counsel for plaintiffs is summarized as follows:
“I.
“A real estate broker is entitled to the commission provided for in a non-exclusive listing agreement when he secures a contract of sale and purchase executed by both a buyer and the sellers, and the sellers thereafter refuse to consummate the transaction. The plaintiff Ira D. Marlatt had an ‘open’ or nonexclusive listing agreement with the Defendants, the record owners of the property in question, and after the expenditure of considerable expense, time and effort, produced a contract that was accepted by the owners. Where the Defendants thereafter refuse to consummate the transaction, on the grounds that only two of them were the owners of the property and the broker should not have secured the consent of the third to the transaction, the broker is entitled to a commission, as provided in the listing agreement. ' ’
“II.
“A purchaser in good faith is entitled to the liquidated *271 damages provided in his contract when the sellers who have executed the contract thereafter refuse to perform. Where three sellers, after accepting and executing a contract, thereafter refuse to perform for the stated reason that the broker should not have secured the approval of one of them to the transaction because she had no interest in the property, the buyer is entitled to liquidated damages as provided in the contract for the refusal of either buyer or seller to perform.”
Counsel for defendants asserts that the defendants “refused to consummate the transaction for the reason that only two of them were in fact owners, * * * that they [the plaintiffs] were apprised of the fact that title to the subject property had been conveyed from the three defendants to the two defendants, to-wit: Tom Price and Anita Price.”
The record shows that a deed was executed by all three defendants conveying the property described in the listing agreement to Tom Price and Anita Price. This deed was never placed of record. It was dated November 1, 1958, and contained no reservations of mineral rights in any of the grantors. The contract procured by Marlatt was dated January 23, 1961. During all the intervening time the record title remained in all three defendants. Tom Price testified that there were reasons why the deed had not been placed of record and that those reasons involved settlement of mineral rights. There is no evidence that either of the plaintiffs ever saw this deed prior to the execution of the contract of sale involved in the case. There was conversation about it received in evidence (most of it incompetent) which establishes the fact that in order to secure an enforceable contract for the purchase of the property it was essential to the broker that the signatures of all the record owners of the property be affixed thereto. In this connection see Gray v. Blake, 128 Colo. 381, 262 P. (2d) 741.
It cannot be disputed that Mary Genevieve Price signed., the listing agreement- dated May 30, 1960, on a *272 printed line beneath which the word “owner” appears. Her son and daughter-in-law also signed this document. Thereafter Mary Genevieve Price signed a contract of sale dated January 14, 1961, to which a rider was attached under the terms of which the sellers (all three defendants) reserved to themselves all production from a producing well. This rider was unacceptable to Hokr the purchaser who took an unqualified position that he would not purchase the land unless he received not less than a one-half interest in the mineral rights, including production from the existing well. A new rider was prepared meeting this demand of Hokr and was signed by all three record owners. Defendants charge that Marlatt was guilty of a breach of confidence in securing the signature of Mary Genevieve Price to this last mentioned rider. Tom Price testified in explanation of his refusal to perform the contract that he wished to protect his mother’s oil and mineral interests in the subject property. If the unrecorded deed means what its terms provide (and Tom Price insists that the broker should recognize it) then the mother had no mineral rights to protect. By the unrecorded deed she parted with any interest she had in the property.
As to the contention that Marlatt made false representations to the mother in securing her signature to the final contract, we find no evidence tending to prove the charge; the testimony of Mary Genevieve Price establishes the contrary. There is no evidence that Mary Genevieve Price was incompetent or under disability of any kind. Her name appears on the several instruments in a firm hand. Her testimony is clear and intelligent. She said in answer to the question, “Did you ask him (Marlatt) any questions?” — “I don’t remember that I did. But I signed it because I saw Tommy’s name on there and I thought that I would sign it too. But I really didn’t need to sign it.” At other points in her testimony we find the following:
Q. Just tell the Court, in your own words, just what *273 Mr. Marlatt said when he came into your home. A. He said that he would have to have my signature on those deeds — on those papers before Tommy could sell the property. Q. What did you say to Mr. Marlatt? A. I told him my name was not supposed to be on there; I had nothing to do with that property in any way anymore. Q. And what did he say? A. He said — well, my name was on the records, and Mr. Hokr was — didn’t—wasn’t going to buy the land if I didn’t sign — if my signature wasn’t on there. Q. Did he say anything to you concerning whether or not your son wanted you to sign that document? A. No, he never mentioned anything like that.
“Q. Did you realize that if this contract went through and was valid, you were going to be conveying away half of your interests in that producing oil well, as well as half of your other mineral rights in the property? A. Well, yes, but he kept telling me that Mr. Hokr didn’t— he wasn’t interested in the oil. And I was just afraid that Tommy wasn’t going to make the sale, if I didn’t sign the oil over, and I didn’t want him to lose it. I knew he wanted to get rid of the land. It was so far away from his ranch, and he needed the money, of course.”
It is clear that she signed the contract of her own free will, and that no false represenations were made by Marlatt as charged in the counterclaim.
We point out that if it is the sincere desire of the defendants that mineral rights should be reserved to the mother by this transaction, one-half of all minerals was reserved to the sellers and all or any part thereof could have been conveyed to the mother for her use and benefit. Plaintiff Hokr was not a party to any misunderstanding concerning mineral rights as contended by plaintiffs. He had a perfectly valid contract and for its breach is entitled to judgment for the amount agreed upon by the parties as liquidated damages. The record before us discloses that the refusal of defendants to con *274 vey the property was without legal justification, entitling the broker to his commission.
The judgment is reversed and the cause remanded with directions to enter a judgment consistent with the views herein expressed.
Mr. Justice Hall and Mr. Justice McWilliams concur.